**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**San Antonio Division**

TIFFANY ROBERSON,                                       :
                                                        :
                         Plaintiff,                     :
                                                        :
v.                                                      :
                                                        :
EXPERIAN INFORMATION SOLUTIONS, INC.; :          Civil Case No. _5:21-cv-316_
EQUIFAX INFORMATION SERVICES, LLC;      :
TRANS UNION, LLC; and SEQUIUM ASSET     :
SOLUTIONS, LLC,                         :
                                                        :
                         Defendants.                    :
_____:

## COMPLAINT

The Plaintiff, Tiffany Roberson, ("Plaintiff"), by counsel, for her Complaint against the

Defendants, Experian Information Solutions, Inc. ("Experian"), Equifax Information Services,

LLC("Equifax"), Trans Union, LLC ("Trans Union"), and Sequium Asset Solutions, LLC,

("Sequium"), alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for actual, statutory and punitive damages, costs and attorney's

fees brought pursuant to 15 U.S.C. §§ 1681a–x (Fair Credit Reporting Act or "FCRA") and the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p.

2.      The purpose of the FCRA is to require consumer reporting agencies to "adopt

reasonable procedures for meeting the needs of commerce for consumer credit, personnel,

insurance, and other information in a manner which is fair and equitable to the consumer, with

regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15

U.S.C. § 1681 (emphasis added). In furtherance of its underlying purposes, the FCRA sets out

requirements and obligations that a consumer report is published and requires that the report be as accurate as possible. 15 U.S.C. § 1681e(b).

3.     In this case, Sequium erroneously furnished derogatory information about an invalid debt to Trans Union, Equifax and Experian and its reporting was misleading regarding the legal status of the debt.

4.     Despite the fact that they knew or should have known that the debt was invalid, Trans Union, Equifax and Experian did not have meaningful procedures to ensure this inaccurate did not appear on Plaintiff's credit reports. Additionally, Trans Union, Equifax and Experian failed to correct the inaccurate reporting after Plaintiff disputed the reporting.

5.     Accordingly, Plaintiff alleges claims against Equifax, Experian and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. § 1681e(b), and for failing to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

6.     Plaintiff alleges claims against Sequium for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1). Plaintiff also alleges claims against Sequium for violations of 15 U.S.C. § 1692e of the FDCPA for its conduct of making false and misleading representations regarding the amount and legal status of Plaintiff's debt and for reporting an invalid debt to the credit bureaus.

### JURISDICTION

7.     The jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

9.    The Plaintiff is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a.

10.    Experian is a foreign corporation authorized to do business in in the Texas through its registered offices in Dallas, Texas. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f).

11.    Equifax is a foreign limited liability company authorized to do business in the Texas through its registered offices in Austin, Texas. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f).

12.    Sequium is a foreign limited liability company doing business in Texas through its registered officed in Austin, Texas. Upon information and belief, Sequium specializes in the collection of debts. Sequium is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a. It is a furnisher governed by the FCRA.

13.    Trans Union is a foreign limited liability company authorized to do business in in the Texas through its registered offices in Austin, Texas. Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f).

## FACTS

### Background on the Invalid Debt

14.    The invalid debt arose from a Plain Green loan made by an illegal lending enterprise that was formed to avoid state usury and licensing laws.

15. For more than eight years, a company called Think Finance, LLC and its subsidiaries (collectively "Think Finance") operated a lending business, which sought to evade state usury laws by using its association with Native American tribes as a front for its business.

16. Under the rent-a-tribe model, loans were made in the name of Plain Green, LLC, which was formed under tribal law to disguise Think Finance's role and to ostensibly shield the scheme by exploiting tribal sovereign immunity. In return for the use of their name, the tribal companies received a nominal flat-fee of the revenue from the loans, but they otherwise had no control over the income, expenses, or day-to-day operations of the businesses.

17. The purpose of this model was to avoid banking regulatory issues and leverage Think Finance's existing sourcing, underwriting, and servicing platforms from a previous rent-a-bank model that was shut down by the Federal Deposit Insurance Corporation.

18. Think Finance identified state regulation, including interest rate caps and prohibitions on payday lending, to be its primary regulatory concern.

19. A central feature of Think Finance's business model is the choice-of-law and arbitration provisions used in its lending agreements. The non-tribal participants in the scheme will claim that they have no liability for their violations of state and federal laws because only tribal law applies to the loans. Such claims have been uniformly denied by courts from a variety of jurisdictions across the country, including by this Court with respect to loan agreements similar to those at issue here.[1]

---

[1] *See Gibbs v. Haynes Invs., LLC*, 967 F.3d 332 (2020); *Gibbs v. Sequoia Cap. Ops., LLC*, 966 F.3d 286 (2020); *Gibbs v. Stinson*, No. 3:18-cv676, 2019 WL 4752792, at \*14–18 (E.D. Va. Sept. 30, 2019); *see also Gingras v. Think Fin.*, 922 F.3d 112 (2d Cir. 2019); *Brice v. 7HBF No. 2, Ltd.*, No. 19-CV-01481-WHO, 2019 WL 5684529 (N.D. Cal. Nov. 1, 2019); *Brice v. Plain Green*, 372 F. Supp. 3d 955 (N.D. Cal. 2019). *Cf. Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 2016 WL 4820635, at \*7 (C.D. Cal. Aug. 31, 2016); *W. Sky Fin., LLC v. State ex rel. Olens*, 300 Ga. 340, 348 (2016), *reconsideration denied* (Dec. 8, 2016); *Inetianbor v. CashCall, Inc.*, No. 13-60066-

20.     There have been numerous regulatory efforts and private lawsuits challenging Think Finance and its co-conspirators' illegal lending and collection of unlawful debt since as early as 2013.

21.     At the end of 2014—the Pennsylvania Attorney General had filed its enforcement action against Think Finance on December 17, 2014. *See Commonwealth of Pa. v. Think Finance, Inc.*, Case No. 14-7139 (E.D. Pa.).

22.     Since then, many other lawsuits have challenged the validity of the loans in addition to the collection of unlawful debt on those loans. *See, e.g.*, *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 119 (2d Cir. 2019) (describing the history of the case), *cert. denied sub nom. Sequoia Capital Operations, LLC v. Gingras*, No. 19-331, 2020 WL 129562 (U.S. Jan. 13, 2020); *CFPB v. Think Fin., LLC*, No. CV-17-127-GF-BMM, 2018 WL 734661, at *1-2 (D. Mont. Feb. 6, 2018) (describing the allegations and history of the case); *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 963 (N.D. Cal. 2019) (describing history of the case and nature of claims); *Gibbs v. Rees*, No. 3:17CV386, 2018 WL 1460705, at *1–4 (E.D. Va. Mar. 23, 2018) (describing the history of the case and nature of the claims).

23.     Despite these regulatory enforcement efforts and private lawsuits establishing the illegality of the loans—including a nationwide class settlement providing over $375 million dollars in relief to consumers approved by a Texas bankruptcy court.[2]

---

CIV, 2015 WL 11438192, at *3 (S.D. Fla. Dec. 8, 2015); *Cooper v. W. Sky Fin., LLC*, No. 13 CVS 16487, 2015 WL 5091229, at *10 (N.C. Super. Aug. 27, 2015); *MacDonald v. CashCall, Inc.*, No. CV 16-2781, 2017 WL 1536427, at *10 (D.N.J. Apr. 28, 2017), *aff'd*, 883 F.3d 220 (3d Cir. 2018); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336 (4th Cir. 2017); *Hayes*, 811 F.3d at 675; *Rideout v. CashCall, Inc.*, No. 2018 WL 1220565, at *8 (D. Nev. Mar. 8, 2018).

[2] *See In re Think Finance, LLC*, Case No. 17-33964 (Bankr. ND. Tx. Dec. 6, 2019) (Doc. 1673 (granting final approval of class action settlement).)

24.     This *Think Finance* Settlement cancelled all loans issued by Plain Green prior to June 1, 2016 and provided deletion of derogatory tradelines. Nonetheless, Sequium continues to report inaccurate information pertaining to Plaintiff, misrepresenting the legality of the debt.

### *Defendants' Inaccurate Credit Reporting*

25.     Plaintiff's usurious Plain Green loan was issued on or around May 12, 2016.

26.     In 2019, Plaintiff received notice she was a class member in the *Think Finance* settlement. Plaintiff learned all Plain Green loans issued prior to June 1, 2016 and deletion requested were sent for all derogatory tradelines through the settlement.

27.     Around the same time, Plaintiff obtained copies of her credit report and learned that Experian, Equifax, and Trans Union were reporting inaccurate information in her credit file.

28.     Defendants' reporting of the collection account harmed Plaintiff by lowering her credit score.

29.     In June 2020, Plaintiff disputed the credit reporting account and requested deletion since the *Think Finance* settlement cancelled her Plain Green loan.

30.     However, no material changes were made to the derogatory reporting of the invalid debt.

31.     Plaintiff disputed Defendants' reporting a second time. In this dispute, Plaintiff detailed that her loan was cancelled through the *Think Finance* Settlement and provided the URL to access the settlement agreement supporting her claims.

32.     However, Defendants made no material changes to their reporting and through their reporting, made it seem that the dispute debt was valid.

33.     It was false and misleading to represent that Plaintiff had owed any balance on the Plain Green debt because the loan was invalid and cancelled.

34.     On numerous occasions, Experian, Equifax and Trans Union furnished the Plaintiff's consumer reports to multiple entities which contained the inaccurate derogatory information identified above.

35.     As a result of Defendants' conduct, Plaintiff suffered actual damages.

### Defendants' Willful Conduct

36.     Cases have been repeated filed against the credit bureaus for reporting cancelled debt arising from usurious rent-a-tribe loans. *See Heath, et al., v Trans Union, LLC*, No. 3:18-cv-720 (E.D. Va.); *Lawrence v. Equifax Info. Serv., LLC*, No. 3:18-cv-800 (E.D. Va.); *Smith v Experian Info. Sols., Inc.*, No. 8:17-cv-629 (C.D. Ca.).

37.     Despite these actions, Equifax, Experian and Trans Union have implemented no procedure to prevent the reporting of such cancelled and invalid debts.

38.     As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

39.     Upon information and belief and consistent with their standard policies and procedures, Equifax, Experian, and Trans Union automatically generated their "investigation" results once the Sequium provided its response to Plaintiff's disputes, verifying the legality and status of the account, and did not take any additional steps after receiving Sequium's responses.

40.     Instead, Equifax, Experian, and Trans Union blindly accepted Sequium's versions of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

41.     Equifax, Experian, and Trans Union continue the practice of parroting the response from the furnisher even though they have been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

42.     Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

43.     Instead, Equifax, Experian, and Trans Union intentionally choose not to comply with the FCRA to lower their costs.

44.     Therefore, at all times relevant to this Complaint, Equifax, Experian and Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

45.     In addition, at all times pertinent to this Complaint, Sequium's processing of consumer disputes was willful and carried out in reckless disregard for a consumer rights as set forth under the FCRA. By example only and without limitation, Sequium's conduct was willful because it was intentionally accomplished through intended procedures and as Sequium's

efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated thoroughly and accurately.

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### (EXPERIAN, EQUIFAX AND TRANS UNION)

46.     Plaintiff reiterates and incorporates the allegations above as if fully set out herein.

47.     Experian, Equifax, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report and credit files they published and maintained.

48.     As a result of Experian, Equifax, and Trans Union's conduct, actions and inactions, the Plaintiff suffered actual damages including without limitation, by example only: credit damage, higher interest rates, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

49.     Experian, Equifax and Trans Union's conduct actions and inactions were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian, Equifax, and Trans Union were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

50.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian, Equifax, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### (EXPERIAN, EQUIFAX AND TRANS UNION)

51.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

1. Experian, Equifax, and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide Sequium with all the relevant information regarding Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of § 1681i(a)(4); and (4) failing to promptly delete the collection account from Plaintiff's credit file upon a lawful reinvestigation of § 1681i(a)(5)(A).

52. Experian, Equifax, and Trans Union's violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages including, but not limited to: credit damage, higher interest rates, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

53. The violations by Experian, Equifax, and Trans Union were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian, Equifax, and Trans Union were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

54. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian, Equifax, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2(b)(1)(A)
## (SEQUIUM)

55. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

56. On one or more occasion within the past two years, by example only and without limitation, Sequium violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

57. When Plaintiff disputed the invalid debt with the credit bureaus, Sequium used a dispute system named, "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher-customers such as Sequium. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systemic and uniform.

58. When the credit bureaus receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

59. Upon information and belief, the ACDV form is the method by which Sequium has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

60. Upon information and belief, Plaintiff alleges that the credit bureaus forwarded Plaintiff's dispute via an ACDV to Sequium.

61. Sequium understood the nature of Plaintiff's disputes when it received the ACDV form.

62. Upon information and belief, when Sequium received the ACDV form containing Plaintiff's disputes, Sequium followed a standard and systemically unlawful process where it only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

63. Upon information and belief, when Sequium receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate.

64.     Because of Sequium's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

65.     Sequium's conduct in violating § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Sequium was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

66.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Sequium in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)(1)(B)**
**(SEQUIUM)**

67.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

68.     On one or more occasions within the past two years, by example only and without limitation, Sequium violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit bureaus.

69.     As Plaintiff detailed in the previous Count, Sequium has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

70.     Sequium was aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

71.     Sequium does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

72.     Sequium understood Plaintiff's disputes and that Plaintiff claimed the information was inaccurate.

73.     Because of Sequium's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

74.     Sequium's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Sequium was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

75.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Sequium in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT FIVE: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e
## (SEQUIUM)

76.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

77.     Sequium's credit reporting violated § 1692e by making a communication that misrepresented the legal status of the Plaintiff's alleged debt, and used false and deceptive means to attempt to collect a debt from the Plaintiff that she did not owe.

78.     Upon information and belief, Plaintiff alleges that Sequium reported this false information about the Plaintiff to Equifax, Experian and Trans Union as a means that forced her to pay on an invalid debt so that her credit score would not suffer as a result of the outstanding collection account being reported about her.

79.     Plaintiff suffered actual damages as a result of Sequium's violation of § 1692e, including the amount she paid on a debt she did not owe, decreased credit score, decreased credit capacity, and emotional distress.

80.     Plaintiff seeks recovery of her actual damages, statutory damages for each violation, her reasonable attorney's fees, and costs, pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems just.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,
**TIFFANY ROBERSON**

By___*/s/ Craig Marchiando*_____
            Counsel

Craig Marchiando
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
Email: craig@clalegal.com

Kristi C. Kelly
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Fax: (703) 591-0167
Email: kkelly@kellyguzzo.com
*Counsel for Plaintiff*