IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TIFFANY ROBERSON, | § § | |
| *Plaintiff,* | § § § | SA-21-CV-00316-JKP |
| vs. | § § § | |
| EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, AND SEQUIUM ASSET SOLUTIONS, LLC, | § § § § § § | |
| *Defendants.* | § | |

## ORDER

Before the Court in the above-styled cause of action are Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Pending Arbitration and Request for Hearing [#29] and Defendant Experian Information Solutions, Inc.'s Motion to Stay Discovery and Scheduling Order Deadlines Pending Resolution of its Motion to Compel Arbitration [#39]. Experian asks the Court to compel all of Plaintiff's claims to arbitration based on a binding arbitration agreement between the parties. Experian's motion to stay discovery asks the Court to stay this case until the Court issues a ruling on the motion to compel arbitration. The Court will grant the motion to compel arbitration, stay this case pending the issuance of a final arbitral award, and dismiss Experian's motion to stay discovery as moot.

## I. Background

By this action, Plaintiff Tiffany Roberson claims that Experian (along with other Defendants) failed to comply with its Fair Credit Reporting Act obligations because an invalid debt appeared in her credit report. Experian contends that Plaintiff agreed to arbitrate all her claims against Experian when she subscribed to CreditWorks, a credit monitoring service.

1

According to Experian, all CreditWorks subscribers, including Plaintiff, accept a "Terms of Use Agreement" and agree to arbitrate all claims "arising out of or relating to any aspect of the relationship," whether "based in contract, tort, [or] statute." Experian argues that Plaintiff's claims arise out of her CreditWorks membership, as it was through this membership that she learned of the facts giving rise to her claims and that the invalid debt appears in her Experian file. Experian asks the Court to find that the Terms of Use Agreement is a valid agreement to arbitrate between the parties and that the agreement contains a valid delegation clause requiring any issue regarding arbitrability to be decided by the arbitrator.

Plaintiff's two-paragraph response to the motion indicates that she "would prefer to arbitrate her claims with Experian" and does not oppose an order compelling her claims against Experian to arbitration. Plaintiff does not, however, agree with Experian that there is a binding arbitration agreement between the parties. Plaintiff argues that Experian is not a party to the Terms of Use Agreement and therefore cannot move to compel arbitration under this contract. Plaintiff nonetheless takes the position that, by filing its motion to compel arbitration, Experian has waived any opposition to Plaintiff consenting to arbitration and requests the dismissal of this case without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

As Experian points out in its reply brief, arbitration is a matter of contract, not consent. *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998) ("Arbitration is a matter of contract between the parties, and a court cannot compel a party to arbitrate unless the court determines the parties agreed to arbitrate the dispute in question.") The Court therefore rejects Plaintiff's argument that it can compel the parties to arbitration based on Plaintiff's consent. The Court will, however, grant Experian's motion to compel arbitration

because Experian has established that it has contractual authority to move for an order compelling Plaintiff to arbitrate her claims.

## II.  Legal Standard

The Fifth Circuit has established a two-step inquiry in determining whether the parties have agreed to arbitrate a claim.  "The first is contract formation—whether the parties entered into *any arbitration agreement at all*.  The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement."  *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original).  In the absence of a valid clause delegating the threshold issue of arbitrability to the arbitrator, both steps are questions for the Court.  *Id.*  However, where the parties' contract delegates the question of arbitrability to the arbitrator, a court possesses no authority to decide whether the parties' dispute falls within the scope of the agreement.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ---U.S.---, 139 S. Ct. 524, 529 (2019).

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists.  *TRC Envtl. Corp. v. LVI Facility Servs., Inc.*, 612 Fed. App'x 759, 762 (5th Cir. 2015).  Hence, the party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate.  *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018).  Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The arbitration provision in the Terms of Use Agreement expressly references the Federal Arbitration Act ("FAA), 9 U.S.C. § 1, *et seq.*, and the agreement evidences a transaction involving interstate commerce. (Terms of Use Agreement [#29-4], at 4.) Accordingly, the FAA applies here. *See* 9 U.S.C. § 2 (FAA applies to written arbitration agreements in contracts "evidencing a transaction involving commerce"). "Section 2 of the FAA provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (quoting 9 U.S.C. § 2). "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting Section 2). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Casarotto*, 517 U.S. at 687.

### III. Analysis

Plaintiff does not dispute that she signed a Terms of Use Agreement as a subscriber of CreditWorks. The evidence before the Court establishes that Plaintiff enrolled in CreditWorks on May 5, 2020. (Williams Decl. [#29-2], at ¶ 3.) To enroll, Plaintiff had to complete a single webform, which required her to enter her personal information and create an account. (Williams Decl. [#29-2], at ¶ 3.) Upon clicking the "Create Your Account" button, Plaintiff received a disclosure that stated, "I accept and agree to your Terms of Use Agreement . . . ." (*Id.*; WebForm [#29-3], at 2.) Plaintiff had the opportunity to click on a hyperlink with the full text of the Terms of Use Agreement. (Williams Decl. [#29-2], at ¶ 3; WebForm [#29-3], at 2.)

4

The Terms of Use Agreement in effect at the time of Plaintiff's enrollment contains a section entitled "Amendments," which advised Plaintiff that she would be bound by the then-current Terms of Use Agreement each time she "order[ed], access[ed] or use[d] any of the Services of Websites" described in the agreement. (Williams Decl. [#29-2], at ¶ 4; Terms of Use May 5, 2020 [#29-4] at 3.) Before filing this lawsuit on June 27, 2021, Plaintiff continuously used her CerditWorks subscription to obtain reports that would have shown how the loans at issue in this case were being reported in her Experian credit file. (Williams Decl. [#29-2], at ¶ 6.)

The Terms of Use Agreement in effect at the time Plaintiff enrolled in CreditWorks also contained an arbitration clause, which stated as follows:

> ECS and you agree to arbitrate all dispute and claims between us arising out of this Agreement directly related to the Services or Websites to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. The agreement to arbitrate includes, but is not limited to:
>
> Claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, whether based in contract, tort, statute . . . , fraud, misrepresentation or any other legal theory . . . .

(Arbitration Agreement [#29-4], at 4.) Although Experian is not specifically identified as a signatory of the Terms of Use Agreement, the arbitration agreement expressly states that "[f]or purposes of this arbitration provision, references to 'ECS,' 'you,' and 'us' shall include our respective parent entities, subsidiaries, affiliates . . . , agents, employees, predecessors in interest, successors and assigns, websites of the foregoing . . . ." (*Id.*) The uncontested record before the

Court establishes that ECS is an affiliate of Experian, both of which are wholly-owned subsidiaries of Experian Holdings, Inc.  (Williams Decl. [#29-2], at ¶ 2.)

CreditWorks revised its Terms of Use Agreement on February 11, 2021, the version which remains in effect at this time.  (Revised Terms of Use [#29-5], at 1.)  The revised Terms of Use Agreement contains an arbitration agreement with identical language defining the parties' agreement to arbitrate and defining the parties.  (*Id.* at 8–9.)

Finally, the Terms of Use Agreement in effect at the time Plaintiff first enrolled in CreditWorks and all subsequent amended Terms of Use Agreements applicable to her accounts contain a provision that allowed her to opt-out of changes to the contract's arbitration clause.  (Williams Decl. [#29-2], at ¶ 5; Terms of Use May 5, 2020 [#29-4], at 5; Revised Terms of Use [#29-5], at 11.)  Experian has no record of Plaintiff ever rejecting any amendment to the arbitration clause in the Terms of Use Agreement.  (Williams Decl. [#29-2], at ¶ 5.)

The Fifth Circuit has allowed a party to compel arbitration even where the party is not a signatory on the broader contract in which the arbitration agreement is embedded, so long as the contract binds that party.  *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 382–83 (5th Cir. 2008) (holding that nonsignatory loan servicer could compel plaintiff to arbitrate his claims where loan agreement demonstrated that plaintiff agreed to arbitrate claims arising against nonsignatories whose relationships resulted from the agreement and that loan servicer was such a relationship).  *See also Green v. Serv. Corp. Int'l*, 333 Fed. App'x 9, at 11 (5th Cir. 2009) (per curiam) (holding that nonsignatory could compel plaintiff to arbitrate any claims within scope of arbitration clause, as plaintiff agreed to arbitrate claims against signatory, its affiliates, and its officer, employees, and agents, and it was undisputed that the nonsignatory was one such affiliate).

Plaintiff's argument that Experian is not contractually permitted to compel arbitration because it was not a signatory to the CreditWorks contract is without merit. Plaintiff agreed to arbitrate its claims against ECS, as well as its parent entities, subsidiaries, and affiliates. It is undisputed that ECS is an affiliate of Experian. (Williams Decl. [#29-2], at ¶ 2.) Plaintiff has not raised any other defense to arbitration. The arbitration provision of the Terms of Use Agreement therefore constitutes a valid and enforceable arbitration agreement between Plaintiff and Experian.

Additionally, both the May 5, 2020 and the revised Terms of Use Agreement contain a delegation clause: "All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision . . . ." (Terms of Use May 5, 2020 [#29-4], at 4–5, Revised Terms of Use [#29-5], at 10.) This provision constitutes a valid delegation clause delegating all questions regarding the arbitrability of the specific claims at issue to the arbitrator.

The Court will therefore compel Plaintiff's claims against Experian to arbitration. The Court declines to grant Plaintiff's request to dismiss this case without prejudice under Rule 41(a) or Experian's request to dismiss this case and will instead stay the case during the pendency of the arbitration.

**IT IS THEREFORE ORDERED** that Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Pending Arbitration and Request for Hearing [#29] is **GRANTED** as set forth herin.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims against Defendant Experian Information Solutions, Inc., are hereby **COMPELLED** to arbitration.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Experian Information Solutions, Inc., are hereby **STAYED** pending the completion of the arbitration.

**IT IS FURTHER ORDERED** that the parties file a quarterly joint advisory regarding the status of the arbitration, with the first advisory due on **April 5, 2022**.

**IT IS FINALLY ORDERED** that Defendant Experian Information Solutions, Inc.'s Motion to Stay Discovery and Scheduling Order Deadlines Pending Resolution of its Motion to Compel Arbitration [#39] is **DISMISSED AS MOOT**.

SIGNED this 5th day of January, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE